**Clifton James WILLIAMS, Appellant,**

v.

**A.L. LOCKHART, Director, Arkansas Department of Corrections, Appellee.**

No. 83–2629.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1984.

Decided June 25, 1984.

---

Steve Clark, Atty. Gen., by Theodore Holder, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Heller, Walker, Vammen & Torrence, by Horace A. Walker, Little Rock, Ark., for appellant.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

PER CURIAM.

Clifton James Williams appeals from the district court's [1] dismissal of his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For reversal Williams contends that the trial court erred (1) in allowing in-court identification testimony that was tainted by an impermissibly suggestive identification procedure; (2) in refusing to instruct the jury about eyewitness identification testimony; and (3) in giving a jury instruction concerning circumstantial evi-

---

1. The Honorable Garnett Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

dence. For the reasons discussed below, we affirm.

## I. BACKGROUND

On January 9, 1981, an assailant robbed three North Little Rock residents at gunpoint. The victims described the robber as a black male, about six feet tall and weighing 170 pounds. On January 12, the victims went to the North Little Rock Police Department where they were given roughly 350 to 400 photographs of black males to look through to see if the robber was among them. The three selected a photograph of appellant Williams taken in approximately 1974. According to police, the eyewitnesses were "ninety percent positive" that Williams was the robber. The police decided to obtain a more recent photograph of Williams to show the witnesses to make absolutely certain their identification was correct. Several days later, the victims viewed two recent photographs of appellant, and positively identified him as the man who committed the robbery. The police arrested Williams ten days later.

The day before trial, investigating officers again showed the recent photographs of Williams to the three witnesses while they were discussing the case with the prosecutor. They were shown no other photographs at that time. At a pretrial hearing, Williams moved to have the in-court identification of the witnesses suppressed as the result of an impermissibly suggestive identification procedure. The trial court denied the motion, and at trial, all three witnesses identified Williams as the assailant. The trial court also denied Williams' request for a jury instruction about eyewitness identification, and over his objections, included an instruction about circumstantial evidence. The jury found appellant guilty of aggravated robbery, and he received a ten-year prison sentence.

On direct appeal, Williams raised the three issues he raises here, and his conviction was affirmed. *Williams v. State*, 5 Ark.App. 20, 632 S.W.2d 235 (1982). He subsequently filed a 28 U.S.C. § 2254 peti-tion for federal habeas corpus relief. The district court dismissed the petition, and this appeal followed.

## I. DISCUSSION

### A. *In-court Identification Testimony*

Williams contends that the in-court identification testimony of the three eyewitnesses to the robbery should have been suppressed as tainted by impermissibly suggestive pretrial identification procedures. He points out that immediately after the robbery, the victims described the assailant as a big man, five feet eleven inches or six feet tall, weighing around 170 pounds. Williams is six feet four inches tall and weighs 271 pounds. Appellant argues that the discrepancy between the victims' description and his actual size, combined with the highly suggestive single photo display a few days after the robbery and again the day before trial, demonstrates that the in-court identification was based on a procedure so conducive to misidentification that he was denied due process of law.

■■■■ While the Supreme Court has recognized the danger of suggestiveness in photographic identifications, *see Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), not all suggestive identification procedures violate due process. "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Id.* at 394, 88 S.Ct. at 976. The court must consider the totality of the circumstances in determining whether identification procedures denied a defendant due process of law. *Neil v. Biggers*, 409 U.S. 188, 196, 93 S.Ct. 375, 380, 34 L.Ed.2d 401 (1972); *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). The Supreme Court has emphasized, moreover, that "reliability is the linchpin in determining the admissibility of identification

testimony ...." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Factors to consider in ascertaining whether a challenged identification is reliable include

the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation.

*Id.; Neil v. Biggers, supra,* 409 U.S. at 199, 93 S.Ct. at 382. "Against these factors is to be weighed the corrupting effect of the suggestive identification itself." *Brathwaite, supra,* 432 U.S. at 114, 97 S.Ct. at 2253.

■ The district court applied the above factors to the facts of the present case and found no substantial likelihood of misidentification. The court recognized the problem of the discrepancy in size descriptions, but noted that the victims had consistently and accurately described the robber as a "big man," and had ample opportunity to observe him during the course of the robbery. Moreover, the procedure followed when the victims chose the photograph of Williams from hundreds of other pictures was sufficient to establish reliability. The district court concluded that the witnesses' in-court identification of Williams derived from a source independent of the photographic viewing the day before trial and therefore was not the result of an impermissibly suggestive procedure. We agree that in the totality of the circumstances, no very substantial likelihood of misidentification existed warranting habeas relief.

**B. Jury Instructions**

■ Williams also contends that the trial court erred in instructing the jury about circumstantial evidence, and in refusing to give a requested instruction on eyewitness identification.[2] As a general rule, jury instructions do not form a basis for habeas corpus relief. *See, e.g., Dietz v. Solem,* 640 F.2d 126, 130 (8th Cir.1981); *Brouillette v. Wood,* 636 F.2d 215, 218 (8th Cir.1980), *cert. denied,* 450 U.S. 1044, 101 S.Ct. 1766, 68 L.Ed.2d 243 (1981). Habeas relief is available when a petitioner establishes that improper instructions resulted in a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure." *Brouillette v. Wood, supra,* 636 F.2d at 218, citing *DeBerry v. Wolff,* 513 F.2d 1336, 1338–39 (8th Cir.1975) (quoting *Hill v. United States,* 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)). The burden of demonstrating that errors in jury instructions were sufficiently prejudicial to "support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson v. Kibbe,* 431 U.S. 145, 154, 97 S.Ct. 1730, 1736, 52 L.Ed.2d 203 (1977). Williams must show that the alleged error so infected the entire trial that he was deprived of his right to due process. *Cupp. v. Naughton,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).

■ After reviewing the record, the district court found no error under Arkansas law in the trial court's refusal to give appellant's requested instruction regarding eyewitness testimony[3] or in giving an in-

---

**2.** The requested instruction was identical to the instruction approved in *United States v. Telfaire,* 469 F.2d 552, 558–59 (D.C.Cir.1972), and widely accepted in federal courts. This circuit has strongly recommended the use of an instruction along *Telfaire* lines in federal cases where identification of the defendant is based solely or substantially on eyewitness testimony. *See, e.g., United States v. Greene,* 591 F.2d 471, 475 (8th Cir.1979); *United States v. Dodge,* 538 F.2d 770, 783–84, *cert. denied sub nom., Escamilla v. Unit-*

ed States, 429 U.S. 1099, 97 S.Ct. 1119, 51 L.Ed.2d 547 (1977).

**3.** In affirming Williams' conviction, the Arkansas Court of Appeals relied in part on *Conley v. State,* 270 Ark. 886, 607 S.W.2d 328, 330 (1980), in which Arkansas Supreme Court expressly approved the refusal to give the requested *Telfaire* instruction because it contained comments on the evidence, a practice permitted in federal court, but not under Arkansas law, and because it concerned the weight to be given identifica-

1268

struction about circumstantial evidence. We agree with the district court that Williams has not carried the heavy burden of establishing that any alleged error in the instructions rose to the level of constitutional significance. He is therefore not entitled to relief on this issue.

Accordingly, the judgment of the district court is affirmed.

tion testimony, a subject not covered by the Arkansas Model Jury Instructions for criminal trial.